UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSEPH SCHNEIDER,

        Petitioner,

   v.

ALFRED MONTEGARI,
Acting Superintendent,

        Respondent.

**MEMORANDUM & ORDER**
22-CV-550 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Joseph Schneider ("Petitioner") pled guilty in Kings County Supreme Court to enterprise corruption, promoting gambling in the first-degree, possession of gambling records in the first degree, and conspiracy in the fifth degree. ECF No. 1 at 3.[1] Petitioner was sentenced to a concurrent term of one to three years of imprisonment for nineteen counts, and a one-year term of imprisonment for one count. Petitioner filed this petition for a writ of habeas corpus ("Petition") claiming violations of his constitutional rights under the Fifth Amendment and Articles Four and Six of the United States Constitution. *Id*. at 5. He asks this Court to set aside his conviction and remand to the trial court for further proceedings. *Id*. at 1. For the reasons set forth below, the Petition is denied.

---

[1] The Petition was submitted through multiple exhibits. Petitioner's affidavit was submitted under ECF No. 1 and Petitioner's memorandum of law was submitted under ECF No. 1-1 and ECF No. 1-2. Citations to the record follow the pagination assigned by the Electronic Court Filing system.

## BACKGROUND

Between 2014 and 2016 Petitioner and other individuals participated in a large-scale nationwide gambling operation known as the "Mitchnick Enterprise," which involved illegal operations in Kings County and other locations throughout the country. ECF No. 1-4 at 35. Much of the evidence against Petitioner stemmed from cellular telephone calls and electronic messages that law enforcement intercepted pursuant to eavesdropping warrants. Petitioner and seven other co-defendants were charged with one count of Enterprise Corruption (N.Y. Penal Law § 460.20(1)(a)), fifty-two counts of Promoting Gambling in the First Degree (N.Y. Penal Law § 225.20(1)), and one count of Conspiracy in the Fifth Degree (N.Y. Penal Law § 105.05(1)). *Id*. at 2.

Petitioner moved to suppress all evidence the prosecution had obtained from the eavesdropping warrants and dismiss the Enterprise Corruption charge against him. ECF No 1-13; ECF No. 1-14. Petitioner argued that the eavesdropping warrants were improper because Petitioner was a California resident who had never set foot in New York, so the court did not have the authority to issue an eavesdropping warrant against him. ECF No. 1-14 at 11. Petitioner further argued that his due process rights, as well as principles of state sovereignty, were violated because he was a California resident—the State of California does not permit eavesdropping warrants for gambling offenses, and federal law does not allow eavesdropping warrants against out-of-state residents. *Id*. at 13–22. Petitioner finally argued that the New York statute authorizing eavesdropping warrants, (N.Y. Crim. Proc. Law § 700), did not permit eavesdropping warrants on out-of-state residents. *Id*. at 22–28.

The Kings County Supreme Court ("trial court") denied Petitioner's motion to suppress. ECF No. 1-15 at 3. The trial court held that because the eavesdropping warrant was executed in

Kings County, it had the jurisdiction to issue the warrant. *Id*. Based upon the reading of the statute, the trial court held that an eavesdropping warrant under N.Y. Crim. Proc. Law § 700 is "executed" when a law enforcement officer intentionally overhears a telephonic or telegraphic communication which, in this instance, occurred in Kings County.[2] *Id*. at 4. The trial court found that the statute does not improperly give law enforcement nationwide jurisdiction, as Petitioner argued, because law enforcement must demonstrate a sufficient nexus between the eavesdropping warrant and Kings County. *Id*. at 5.

The trial court cited to both New York and federal law to support its decision. *See, e.g., People v. DeLaCruz*, 593 N.Y.S.2d 167, 287 (N.Y. Sup. Ct. 1992) ("'[T]o execute' an eavesdropping warrant intercepting a telephone conversation is to order the intentional overhearing or recording of the human voice as it is transferred through the use of wire, cable, or other like communication."); *People v. Perez*, 848 N.Y.S.2d 525, 588 (N.Y. Sup. Ct. 2007) ("[A]n eavesdropping warrant is 'executed' when and where telephonic communications are intercepted or electronic communications are acquired."); *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992) (holding that "interception" occurred at both the site of the target phone and where the communication was first heard); *United States v. Kazarian*, No. 10-CR-895, 2012 WL 1810214, at *3 (S.D.N.Y. May 18, 2012) (holding that a federal court has the authority to authorize a wiretap if the court is located where "the to-be-tapped telephone is located" *or* where "the redirected contents are first heard"). The trial court did not find the fact that California does

---

[2] The Court took several steps to reach this conclusion. It first recognized that N.Y. Crim. Proc. Law § 700.35(1) states that an eavesdropping warrant is "executed" by law enforcement. *Id*. N.Y. Crim. Proc. Law § 700.30(7) states warrants must contain a provision that authorizes interception as soon as possible, meaning that the warrant is "executed" when communication is intercepted. *Id*. Lastly the trial court pointed to N.Y. Crim. Proc. Law § 700.05(3), which defines intercepted communications as those "intentionally overheard or recorded by a person other than the sender or receiver thereof . . . ." *Id*.

3

not permit eavesdropping warrants for gambling crimes to be a valid defense because: (i) all the crimes which were subject to the eavesdropping warrant at issue were alleged to have been committed in Kings County, and (ii) the warrant was executed in Kings County, not in California. *Id*. at 6.

On March 6, 2018, Petitioner pled guilty to seventeen counts of Promoting Gambling in the First Degree (N.Y. Penal Law §225.10(1)), one count each of Enterprise Corruption (N.Y. Penal Law §460.20(1)(a)), Possession of Gambling Records in the First Degree (N.Y. Penal Law § 225.20(1)), and Conspiracy in the Fifth Degree (N.Y. Penal Law §105.05(1)). ECF No. 1 at 3. On May 30, 2018, Petitioner was sentenced to a concurrent prison term of one to three years for each of the Promoting Gambling in the First Degree charges (N.Y. Penal Law §225.10(1)), the Enterprise Corruption charge (N.Y. Penal Law §460.20(1)(a)), and Possession of Gambling Records in the First Degree (N.Y. Penal Law § 225.20(1)) as well as one year for the Conspiracy in the Fifth Degree charge (N.Y. Penal Law §105.05(1)). *Id.* at 2

Petitioner appealed his conviction to the Appellate Division, Second Department ("Appellate Division"). Petitioner raised four claims, two of which now serve as grounds for habeas relief. ECF. No. 1-4. The Appellate Division upheld the judgment of conviction on October 16, 2019, stating that the trial court had the jurisdiction to issue eavesdropping warrants to intercept communications made outside New York State for the purpose of investigating crimes in New York and such warrants do not constitute an extraterritorial application of state law. *See People v. Schneider*, 112 N.Y.S.3d 248, 250–51 (N.Y. App. Div. 2019). The Appellate Division agreed with the trial court's analysis that the eavesdropping warrants were validly executed in Kings County because law enforcement intercepted the communications in Kings County. *Id.*; *see also* N.Y. Crim. Proc. Law §§ 700.05(4), 700.05(3)(a), 700.35(1).

4

Petitioner sought leave to appeal to the New York Court of Appeals, arguing that the trial court: (i) erred and acted beyond the scope of its authority when it issued eavesdropping warrants for a California resident who had not committed crimes in New York, and, (ii) violated the Due Process Clause, the Privileges and Immunities Clause, and the Full Faith and Credit Clause of the U.S. Constitution, as well as the Separate Sovereigns Doctrine.  ECF No. 1-8.  On January 5, 2020, leave was granted.  *See People v. Schneider*, 141 N.E.3d 467 (N.Y. 2020).  On June 3, 2021, the New York Court of Appeals affirmed the order of the Appellate Division.  *See People v. Schneider*, 173 N.E.3d 61, 203 (N.Y. 2021).  The Court of Appeals held the eavesdropping warrants were executed in the geographical jurisdiction where law enforcement officers intercepted the communications, and that the warrants were executed within the trial court's judicial district.  *Id*.  The Court of Appeals interpreted N.Y. Crim. Proc. Law §700, stating that "the statute makes plain that a warrant is 'executed' at the time when and at the location where a law enforcement officer intentionally records or overhears telephonic communications and accesses electronic communication targeted by the warrant."  *Id*. at 196.  The Court of Appeals asserted that it is not the communication carriers who execute the warrant.  *Id*. at 199 ("An eavesdropping order may direct communications service providers to furnish the applicant information, facilities, or technical assistance necessary *to accomplish the interception* . . . .") (emphasis added) (internal quotation marks omitted).  The Court of Appeals also held that their interpretation was in line with federal court precedent that a district court has jurisdiction to issue an eavesdropping warrant under federal eavesdropping statutes if the point of interception is located within the territorial boundaries of the district court issuing the warrant (the "listening post rule"). [3]  *Id*. at 200–01, 203; *see also Rodriguez*, 968 F.2d at 136; *United*

---

[3]     *See* 18 U.S.C. §§ 2516, 2518.

*States v. Jackson*, 849 F.3d 540, 551–52 (3d. Cir. 2017).  The Court of Appeals further held that Petitioner's claim that the warrants violated his Constitutional rights as a California resident were without merit.  *Id*. at 203.

Petitioner applied to the United States Supreme Court for a writ of certiorari.  On October 12, 2021, the application was denied.  *Schneider v. New York*, 142 S. Ct. 344 (2021).  Petitioner now seeks a writ of habeas corpus on the grounds that:  (i) Petitioner's due process rights were violated when the Kings County Supreme Court judge issued an extraterritorial wiretap order, and (ii) the Kings County Supreme Court violated the Supremacy Clause, the Full Faith and Credit Clause, the Privileges and Immunities Clause and the Separate Sovereigns Doctrine when it authorized the eavesdropping warrant because the warrant would not have been permitted under California's state statutes for eavesdropping.  ECF No. 1-1 at 1, 7, 16.[4]

## LEGAL STANDARD

### I. Deferential Review Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "Act")

Habeas petitions are governed by the standards laid out in the AEDPA, which commands deference to the prior decisions of the state courts.  The Act provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4] The Court disagrees with Respondent's argument that Petitioner is making a Fourth Amendment claim and will not address any Fourth Amendment issues as they were not raised by Petitioner.

6

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A district court may, therefore, only grant a writ of habeas corpus where "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court," *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)), or where "presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at" a different conclusion. *Id*. Alternatively, the writ may be granted "if the state court identifies the correct governing legal principle . . . but *unreasonably applies* that principle to the facts." *Id.* at 133 (quoting *Williams*, 529 U.S. at 412) (emphasis added). Even where the state court appropriately applied federal law, a district court may act pursuant to § 2254(d)(2), but "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

## DISCUSSION

### I. The State Court's Judgment was not Contrary to or an Unreasonable Application of Federal Law as Determined by the Supreme Court

Petitioner contends that his due process rights were violated when the Kings County Supreme Court issued an exterritorial warrant on Petitioner's phone in California. ECF No. 1-1 at 7. According to Petitioner, issuing the warrant exceeded the trial court's authority to issue an eavesdropping warrant as vested to the states by Title III of the Omnibus Crime Control and Safe Street Act, 18 U.S.C. §2516 (2) ("Title III"). *Id*. at 8.

Title III was enacted in response to two Supreme Court decisions—*Berger v. New York*, 388 U.S. 41 (1967) and *Katz v United States*, 389 U.S. 347 (1967). In *Berger*, the Supreme

7

Court found New York's eavesdropping statute unconstitutional because it contained no requirement for particularity as required by the Fourth Amendment. 88 U.S. at 59–63. In *Katz*, the Supreme Court held that electronic surveillance constituted a "search" even when no property interest was invaded. 389 U.S. at 353–59.

Title III's enabling statute is 18 U.S.C. §§ 2510–23. 18 U.S.C. § 2516 authorizes the interception of wire, oral, or electronic communications. Section 1 provides authorization for federal authorities to issue eavesdropping warrants and Section 2 provides authorization for states.

> "The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense . . . designated in any applicable State statute authorizing such interception . . . ."

18 U.S.C. §2516(2).

Petitioner claims that the Court of Appeals' decision was contrary to, and an unreasonable application of, federal law because the trial court exceeded its authority under 18 U.S.C. §2516(2). As such, he contends that the warrant was extraterritorial and violated his due process rights.

According to Petitioner, 18 U.S.C. §2516(2) imposed minimal constitutional criteria for any state regulation on eavesdropping warrants, and the state statute could be as, or more restrictive than those criteria, but not less. ECF No. 1-1 at 8. The federal counterpart of the eavesdropping legislation, 18 U.S.C. §2516(1), enumerates many crimes that would warrant a

8

wiretap investigation, including crimes that "would naturally occur in more than one geographic jurisdiction and outside the jurisdiction of any single federal judge." ECF No. 1-1 at 10. Section 1 also demands that any eavesdropping warrant conform to the statute's procedures, encapsulated in 18 U.S.C. §2518(3). Subsection 3 discusses the territorial jurisdiction of warrants stating:

> "Upon such application the judge may enter an *ex parte* order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction) . . . ."

18 U.S.C. § 2518(3).

Petitioner argues that the state counterpart does not contain language concerning crimes that would occur in more than one jurisdiction, and 18 U.S.C. §2518(3) only references federal courts authority to approve eavesdropping warrants *outside* their jurisdiction. This indicates, according to Petitioner, that Title III does not vest in state statutes the authority to issue eavesdropping warrants outside of their jurisdiction. ECF No. 1-1 at 10–11.

Respondent argues that Title III places no restriction on a state court's jurisdiction and the only differences between the federal and state subsections is that the federal subsection lists the federal agents permitted to seek an eavesdropping warrant and the state subsection does not. ECF No. 5 at 21–22. Respondent also contends that many of the crimes enumerated in the state subsection could also occur in more than one jurisdiction, just as in the federal subsection. *Id*. Respondent further argues that the Court of Appeals' statutory interpretation of the state statute and application of the listening post rule to interpret that law were permissible under Title III.

Each side provides different interpretations of Title III and its implications for the jurisdictional authority of state court judges to issue eavesdropping warrants. It is not, however,

9

the province of a federal habeas court to weigh these interpretations, but rather to determine, based on the Petitioner's claim, whether the decision of the Court of Appeals was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

While many federal circuit courts have ruled on the applicability of the listening post rule and its implications for the territorial jurisdiction of eavesdropping warrants at both the federal and state level, the Supreme Court has not. There is thus no clear Supreme Court precedent on the listening post rule as it relates to any parameters for the territorial jurisdiction of eavesdropping warrants at the federal or state level, or on any interpretation of Title III's authority over state eavesdropping statutes. "Clearly established federal law" refers to the governing principles set forth by the Supreme Court at the time the state court renders its decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (citing *Williams*, 529 U.S. at 412). "Principles of constitutional law grounded in the holdings of federal circuit courts, or even in the dicta of the Supreme Court, do not provide a basis for habeas relief." *Jackson v. Conway*, 763 F.3d 115, 134 (2d Cir. 2014) (quoting *Rodriguez v. Miller,* 537 F.3d 102, 106 (2d Cir. 2008)) (citing *Carey v. Musladin,* 549 U.S. 70, 74, 76–77 (2006)).

Respondent offers multiple federal circuit court and state court decisions supporting the application of the listening post rule. *See, e.g.*, *Rodriguez*, 968 F.2d at 136; *United States v. Tavarez*, 40 F.3d 1136, 1138 (10th Cir. 1994); *United States v. Denman*, 100 F.3d 399, 404 (5th Cir. 1996); *United States v. Ramirez*, 112 F.3d 849, 852 (7th Cir. 1997); *United States v. Luong*, 471 F.3d 1107, 1108 (9th Cir. 2006); *United States v. Henley*, 766 F.3d 893, 912 (8th Cir. 2014); *United States v. Cano-Flores*, 796 F.3d 83, 86–87 (D.C. Cir. 2015); *United States v. Jackson*,

849 F.3d 540, 553 (3d Cir. 2017); *United States v. Stowers*, 32 F.4th 1054, 1070 (11th Cir. 2022).

Even though a majority of the circuit courts have adopted the listening post rule, it cannot be said that the rule is clearly established federal law. *See Williams*, 529 U.S. at 381 ("If [the Supreme Court] has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) ("Although an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent, it may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct.") (citations omitted); *Parker v. Matthews*, 567 U.S. 37, 48 (2012) ("[The circuit court] erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision."); *Lopez v. Smith*, 574 U.S. 1, 2, (2014) ("We have emphasized, time and again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is clearly established.") (internal quotation marks omitted).

In *Dahda v. United States*, the Supreme Court briefly touched on the concept of interception and the listening post rule when it held that the wiretap warrant in question was defective because it authorized *interception* outside the jurisdiction where the warrant was issued. 138 S. Ct. 1491, 1499 (2018) ("The Orders do contain a defect, namely, the sentence authorizing interception outside Kansas . . . ."). The state court in *Dahda* had approved a warrant which permitted interception of the target cell phone communication outside of the territorial

11

jurisdiction of the state court. *Id*. at 1495–96. Although neither side argued this point, the Supreme Court did note that a listening post within a court's territorial jurisdiction could intercept communications made from phones within or outside of the jurisdiction. *Id*. at 1499 ("As we discussed above, a listening post within the court's territorial jurisdiction could lawfully intercept communications made to or from telephones located within Kansas or outside Kansas."). Although this declaration does support the Court of Appeals' decision and the Respondent's arguments in this case, it was merely dicta and therefore cannot suffice as "clearly established" law. *See Williams*, 529 U.S at 365 ("[T]he phrase clearly established Federal law, as determined by [the Supreme] Court refers to holdings, as opposed to the dicta, of this Court's decision as of the time of the relevant state court decision").

While most circuit courts have adopted the listening post rule, and the Supreme Court has remarked positively on it, this does not "clearly establish" or uphold the listening post rule. Similarly, the Supreme Court has not ruled that a state adopting the listening post rule exceeds the authority vested by Title III. Thus, the Court of Appeals' decision was neither contrary to nor an unreasonable application of "clearly established" federal law as determined by the Supreme Court. *See Marshall*, 569 U.S. at 63 (holding that habeas petitioner was not entitled to relief as there was no clearly established federal law); *Lopez*, 574 U.S. at 4–9 (holding that, as there was no Supreme Court decision that addressed the specific question presented, the Ninth Circuit had no basis to reject the state court's ruling); *Musladin*, 549 U.S. at 77 (2006) (holding that because the Supreme Court had not ruled on the issue presented, the state court's decision could not be an unreasonable application of clearly established federal law).

Petitioner refers to three Supreme Court cases, contending that the trial court issued an extraterritorial eavesdropping warrant that was executed in California. ECF No. 1-1 at 4 (citing

12

*Nielsen v. Oregon*, 212 U.S. 315, 321 (1909); *Allgeyer v. Louisiana*, 165 U.S. 578 (1897); *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914)). These citations are inapposite. Contrary to Petitioner's characterization of the relevant issues, we are not determining whether the Court of Appeals' decision violated a clearly established federal law because a New York State eavesdropping warrant was executed in California, but whether the New York warrant *was executed in California at all*. The Court of Appeals held that it was not, because the phone calls were "intercepted" in Kings County. As such, the warrant was "executed" within the state court's territorial jurisdiction. That decision is not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner has failed to establish that he is entitled to habeas relief.

## II. Petitioner's other Constitutional Claims

Petitioner further argues that the trial court violated the Supremacy Clause, the Full Faith and Credit Clause, the Privileges and Immunities Clause, and the Separate Sovereigns Doctrine when it authorized the eavesdropping warrant because the warrant would not have been permitted under California's eavesdropping statutes. ECF No. 1-1 at 16. The Court of Appeals held that Petitioner's remaining constitutional claims were without merit. When a state court adjudicates a Petitioner's federal claims on the merits, the federal habeas court must review the claims with deference to the AEDPA. In other words, this Court must determine if the Court of Appeals' decision is contrary to, or an unreasonable application of, "clearly established" federal law, as determined by the Supreme Court, or based on an unreasonable determination of the facts. *See Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001); 28 U.S.C. §2254(d).

Petitioner maintains that when the trial court issued an eavesdropping warrant for Petitioner's phones in California, it applied New York law in California. ECF No. 1-1 at 16–17.

13

Petitioner contends that this violates the Supremacy Clause, Full Faith and Credit Clause, the Privileges and Immunities Clause, and the State Sovereign Doctrine. ECF No. 1-1 at 19–20; ECF No. 1-2 at 1–4. These claims are all based on the presumption that the Court of Appeals applied the laws of New York State to California. Once again, the Court of Appeals concluded that—even though calls were placed in California—because the communications were intercepted in New York, the warrant was *executed* in New York, and thus the court applied the laws of New York in making its decision. *See Schneider*, 173 N.E.3d 61 at 196. As noted earlier, there is no clearly established federal law resolving the question of where the warrant was executed. Therefore, Petitioner's remaining claims are meritless because they are premised on the contention that the warrant was executed outside the state court's jurisdiction, which, without clear Supreme Court precedent, is a conclusion the Court declines to reach.

## CONCLUSION

For the foregoing reasons, the Court denies the instant Petition with prejudice. The Court further finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2). Any further request for a certificate of appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b). The Clerk of Court shall enter judgment accordingly and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
        September 30, 2022